UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| JENNA HULLETT, | |
| Plaintiff, | |
| v. | Case No. 3:23-CV-899-CCB-SJF |
| JEAN DREESSEN, et al., | |
| Defendants. | |

## OPINION AND ORDER

Plaintiff Jenna Hullett, as the Personal Representative of the Estate of J.M., sued Indiana Department of Child Services ("DCS") employees Jean Dreessen, Michele Stowers, and Michel Goebel ("DCS Defendants") under 42 U.S.C. § 1983 for violation of J.M.'s Fourth and Fourteenth Amendment Rights. DCS Defendants have moved to dismiss all claims against them. [DE 13.] For reasons stated herein, DCS Defendants' motion to dismiss is granted in part and denied in part.

## BACKGROUND

Plaintiff alleges that four-year-old J.M. was abused, neglected, and ultimately murdered by his parents, defendants Mary Yoder and Alan Morgan, on October 11, 2021. [DE 9 at ¶ 1.] Plaintiff alleges that when J.M. was born on June 17, 2017, he had drugs in his system, and Yoder and Morgan already had substantiated allegations of neglect and abuse regarding J.M.'s older brother, M.Y, and had an open Child in Need of Services ("CHINS") proceeding involving M.Y. [Id. at ¶¶ 23-26.] After J.M.'s birth, DCS allegedly took J.M. directly into custody at the hospital so that he did not go home with Yoder and Morgan. [Id. at ¶ 27.] From the hospital, J.M. was placed in kinship placement, then foster care, and, when he was four months, with Plaintiff. [Id. at ¶ 32.] Plaintiff alleges that prior to and continuing over J.M.'s wardship, DCS Defendants were allegedly aware that Yoder and Morgan had significant drug and mental health issues, and domestic violence issues. [Id.

at ¶¶ 33-37.] From April 7, 2021 to June 27, 2021, when DCS Defendants allegedly had custody of J.M., DCS Defendants permitted J.M. to have a trial home visit with Yoder and Morgan, during which time J.M. suffered physical and psychological abuse from Yoder and Morgan. [*Id.* at ¶¶ 47, 71.] J.M. was then allegedly placed for the first time in his life in the sole care and custody of Morgan and Yoder. [*Id.* at ¶ 65.] Plaintiff alleges that DCS Defendants withheld court-ordered services for J.M., failed to perform Court-ordered drug tests for J.M.'s parents, intentionally withheld information from the CHINS court, and omitted information from J.M.'s Court-Appointed Special Advocate ("CASA"). [*Id.* at ¶¶ 45, 51] Plaintiff alleges that DCS Defendants violated J.M.'s constitutional rights arising from J.M.'s injuries by Morgan and Yoder when J.M. was in DCS's custody during that six-month period, and arising from DCS Defendants' alleged affirmative acts that created or increased the risk of harm to J.M. by Morgan and Yoder that ultimately caused J.M.'s injuries and his death. [*Id.* at ¶¶ 71-72.]

## LEGAL STANDARD

Dismissal under Fed. R. Civ. P. 12(b)(6) for failure to state a claim is proper when a plaintiff fails to satisfy Fed. R. Civ. P. 8(a)(2), which requires that complaints contain "a short and plain statement of the claim showing that the pleader is entitled to relief," so that the defendant is given fair notice of the claims against her. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The Court must accept all the factual allegations as true and draw all reasonable inferences in the light most favorable to the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007); *Bell v. City of Chicago*, 835 F.3d 736, 738 (7th Cir. 2016). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 500 U.S. at 555. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of … plausibility of entitlement to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 557).

In deciding whether a complaint states a plausible claim, "a court need not accept as true legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) (internal quotations and citations omitted). "Moreover, the court is not bound by a plaintiff's legal characterization of the facts or required to ignore facts set forth in the complaint that undermine a plaintiff's claim." *Pearson v. Garrett-Evangelical Theological Seminary, Inc.*, 790 F. Supp. 2d 759, 762–63 (N.D. Ill. 2011) (citing *Scott v. O'Grady,* 975 F.2d 366, 368 (7th Cir.1992)); *cf. Gociman v. Loyola Univ. of Chicago*, 41 F.4th 873, 881 (7th Cir. 2022) ("Dismissal is proper only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." (internal quotations omitted)). Finally, "[i]t is the defendant's burden to establish the complaint's insufficiency." *Gunn v. Cont'l Cas. Co.*, 968 F.3d 802, 806 (7th Cir. 2020).

## DISCUSSION

DCS Defendants make several arguments in their motion to dismiss, including that Plaintiff lacks standing to bring this action, Plaintiff's action is time-barred, Plaintiff fails to state a claim for violation of J.M.'s substantive and procedural due process rights under the Fourteenth Amendment and under the Fourth Amendment, and the DCS Defendants are entitled to qualified immunity. The Court addresses each in turn.

   a. Standing

As a preliminary matter, the Court must first determine whether Plaintiff has standing to bring this § 1983 action against DCS Defendants for allegedly causing the injuries and death of J.M. Section 1983 does not expressly provide who has standing to bring a survival civil rights action upon the death of the plaintiff. Thus, where federal law does not address a particular concern, § 1988 provides that the analogous state law be applied unless the state law is "inconsistent with the Constitution and laws of the United States." § 42 U.S.C. § 1988(a); *Robertson v. Wegmann*, 436 U.S.

584, 588-94 (1987). "In a federal civil rights action where the person who has been deprived of his rights has died, the action survives for the benefit of the estate if the applicable state law creates such a survival action." *Spence v. Staras*, 507 F.2d 554, 557 (7th Cir. 1974) (collecting cases); *see also Thomas ex rel. Smith v. Cook Cnty. Sheriff*, 401 F. Supp. 2d 867, 872 (N.D. Ill. 2005) (plaintiff who has standing under Illinois' Wrongful Death Act has standing to maintain § 1983 action).

DCS Defendants argue that Plaintiff lacks standing to pursue this action because she lacks standing under Indiana's Child Wrongful Death Statute, Ind. Code § 34-23-2-1 ("CWDS"). The CWDS permits an action against a person whose wrongful act or omission caused the injury or death of a child to be maintained by (1) the child's father and mother, (2) in the case of a divorce or dissolution of marriage, the person to whom had custody of the child, or (3) a guardian, for the injury or death of a protected person. Ind. Code § 34-23-2-1(c). Plaintiff was not J.M.'s parent, and she does not allege that she was J.M.'s guardian. But Indiana's General Wrongful Death Statute, Ind. Code § 34-23-1-1 ("GWDS") provides that:

> When the death of one is caused by the wrongful act or omission of another, **the personal representative** of the former may maintain an action therefor against the latter, if the former might have maintained an action had he or she, as the case may be, lived, against the latter for an injury for the same act or omission.

Ind. Code § 34-23-1-1 (emphasis added); *see also Angel Shores Mobile Home Park, Inc. v. Crays*, 78 N.E.3d 718, 727 (Ind. Ct. App. 2017) (explaining that "the CWDS operates as a mere amplification of those remedies available under the GWDS" by permitting parents, not only personal representatives of estates, to bring such claims). Further, Under Indiana's Survival Statute, Ind. Code § 34-9-3-4, a personal representative of a decedent may also maintain an action against a wrongdoer whose wrongful act or omission causes personal injuries to another person, and that person subsequently dies from causes other than those personal injuries. Ind. Code § 34-9-3-4. Thus, because Plaintiff, as personal representative of the Estate of J.M., has standing under the

4

GWDS and Indiana's Survival Statute, she also has standing to bring this § 1983 action against the DCS Defendants for allegedly causing J.M. injuries and his death.

b. Statute of limitations

DCS Defendants also argue that Indiana's statute of limitations bars Plaintiff's § 1983 action for J.M.'s alleged injuries that did not cause J.M.'s death from April 7, 2021 to June 27, 2021 because Plaintiff brought this lawsuit outside the limitations period. A statute of limitations defense is an affirmative defense; therefore, a complaint does not need to anticipate or plead against it. *See Xechem, Inc. v. Bristol-Myers Squibb Co.*, 372 F.3d 899, 901 (7th Cir. 2004). Dismissal under Rule 12(b)(6) based on a statute of limitations defense may still be "appropriate when the plaintiff effectively pleads herself out of court by alleging facts that are sufficient to establish the defense." *Hollander v. Brown*, 457 F.3d 688, 691 n.1 (7th Cir. 2006).

Section 1983 does not provide a specific statute of limitations. *Owens v. Okure*, 488 U.S. 235, 239, 109 (1989). Thus, the Court must, under 42 U.S.C. § 1988(a), look to state law and its limitations period, including its related tolling provisions. *Ray v. Maher*, 662 F.3d 770, 772-73 (7th Cir. 2011). Section 1983 claims are governed by the forum state's personal-injury statute of limitations. *Campbell v. Forest River Preserve Dist. Of Cook County, Ill.*, 752 F.3d. 665, 667 (7th Cir. 2024). "[W]here state law provides multiple statutes of limitations for personal injury actions, courts considering § 1983 claims should borrow the general or residual statute for personal injury actions." *Owens*, 488 U.S. at 249-250 (1989). Under Indiana law, the statute of limitations for personal injury actions is two years. Ind. Code § 34-11-2-4. Therefore, the statute of limitations for Plaintiff's § 1983 action for violation of J.M.'s constitutional rights is two years.

Plaintiff argues that, because J.M. was a minor at the time of the alleged injuries, the statute of limitations is tolled until J.M. would have reached the age of 18. The Court disagrees. Under Indiana law, "a person who is under legal disabilities when the cause of action accrues may bring the

5

action within two (2) years after the disability is removed." Ind. Code § 34-11-6-1.  However, the Plaintiff is the personal representative of J.M.'s estate, not J.M himself, therefore Ind. Code § 34-11-6-1 does not apply. *See Robertson v. Gene B. Glick Co.*, 960 N.E.2d 179, 184 (Ind. Ct. App. 2011) (rejecting argument that tolling statute for persons under legal disabilities should apply because plaintiff was acting as a personal representative, and "it is statutorily impossible for a personal representative to be under the legal disability of minority[.]").

While the Court looks to Indiana law to determine the limitations period and related tolling provisions, the accrual date of a § 1983 cause of action "is a question of federal law that is *not* resolved by reference to state law." *Wallace v. Kato*, 549 U.S. 384, 388 (2007) (emphasis in original). The accrual date marks the date on which the statute of limitations begins to run. *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 450 (7th Cir. 1990).  A § 1983 claim accrues when the plaintiff knows or has reason to know that his or her constitutional rights have been violated.  *Wilson v. Giesen*, 956 F.2d 738, 740 (7th Cir. 1992).  The basis for Plaintiff's § 1983 action is that DCS Defendants, through its acts and omissions, violated J.M.'s constitutional rights. Based on the allegations in the amended complaint, the Court cannot determine when Plaintiff knew or had reason to know that DCS Defendants violated J.M.'s constitutional rights through its alleged acts and omissions.  The Court therefore does not find, at the motion-to-dismiss stage, that the limitations period bars Plaintiff from asserting a claim against the DCS Defendants for violating J.M.'s constitutional rights.

   c. Violation of Fourteenth Amendment Rights

DCS Defendants argue that, based on the Supreme Court decision *DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 195 (1989), Plaintiff fails to state a claim that DCS Defendants violated J.M.'s Fourteenth Amendment rights because DCS Defendants' failure to protect J.M. from private violence does not constitute a due process violation.  In Plaintiff's

response to DCS Defendants' motion to dismiss, she argues that she properly alleges violations of J.M.'s substantive and procedural due process rights. The Court will address each in turn.

        i.     Substantive Due Process

The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV. The right to life and safety through personal security is a fundamental interest protected by the substantive portion of the Due Process Clause. *Youngberg v. Romeo*, 457 U.S. 307, 315-16 (1982). However, in general, "a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." *DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 197 (1995). The Supreme Court reasoned that the purpose of substantive due process is "to protect the people from the State, not to ensure that the State protected them from each other." *Id.* at 196. In *DeShaney*, a four-year-old child was severely abused by his father, who was subsequently convicted of child abuse. *Id.* at 193. The child and his mother then sued the county department of social services and its social workers under § 1983, alleging that the defendants knew or should have known that the child's father posed a risk of violence to the child, and their failure to intervene to protect the child violated the child's due process rights under the Fourteenth Amendment. *Id.* at 192-193. The Supreme Court held that, under these circumstances, the defendants were not liable because the child was in the custody of his father when he was harmed, not in the State's custody. *Id.* at 199-200. The fact that the State had temporary custody prior to returning him to his father did not alter the analysis, "for when it returned him to his father's custody, it placed him in no worse position than that in which he would have been had it not acted at all; the State does not become the permanent guarantor of an individual's safety by having once offered him shelter." *Id.* at 201.

7

There are two exceptions to the general rule established in *DeShaney* that a State's failure to protect an individual against private violence does not constitute a substantive Due Process violation: "(1) when the state has a special relationship with the person such as when it has custody over a person, it must protect him because no alternate avenues of aid exist, and (2) under the state-created danger exception, liability exists when the state affirmatively places a particular individual in a position of danger the individual would not have otherwise have faced." *Doe v. Vill. of Arlington Heights*, 782 F.3d 911, 916, 917 (7th Cir. 2015) (internal quotations and citations omitted). DCS Defendants argue that Plaintiff does not allege sufficient facts to demonstrate that it falls under either exception.

As to the "special relationship" doctrine "state actors are liable only if they violated the right of a child in state custody not to be handed over by state officers to a foster parent or other custodian, private or public, *whom the state knows or suspects to be a child abuser*." K.H. ex. Rel. Murphy v. Morgan, 915 F.2d 846, 852 (7th Cir. 1990) (emphasis in original). "For there to be a constitutional duty, the state must have *custody* over the child, or it cannot be liable under the special relationship exception to *DeShaney*." *Waubanascum v. Shawano Cnty.*, 416 F.3d 658, 665 (7th Cir. 2005) (emphasis in original); *see also First Midwest Bank Guardian of Est. of LaPorta v. City of Chicago*, 988 F.3d 978, 988 (7th Cir. 2021) ("The special-relationship exception did not apply in *DeShaney* for the obvious reason that the injured child was not in state custody."). Plaintiff argues that special relationship exception applies because DCS allegedly retained "legal custody" of J.M. from April 7, 2021 to June 27, 2021 when J.M. had a trial home visit with Morgan and Yoder, and was allegedly abused. [DE 9 at ¶¶ 30, 68, 71.] Plaintiff also alleges that DCS Defendants knew J.M. was at a risk of abuse while in the "physical custody" of Morgan and Yoder. [*Id.* at ¶ 41.] Plaintiff also states in her response in opposition to the DCS Defendants' motion to dismiss that during the trial home visit, J.M. remained a ward of DCS, which retained "legal custody of J.M.," and allowed Morgan and Yoder to have

8

"physical custody." [DE 19 at 11.] Defendants argue the special relationship exception does not apply because, even if the state took custody of J.M., by placing him back with his parents, the state relinquished control of J.M., and to find that a special relationship exists in this circumstance would contradict the Supreme Court's holding in *DeShaney*.

In *DeShaney*, the child was in the court's custody, but following a recommendation from the child protection team, the juvenile court dismissed the child protection case and returned the child to the custody of his father. 489 U.S. at 192. The Supreme Court held that the state was therefore not liable, even though the state at one time had temporary custody of the child. *Id.* The Court is aware of two circuit court decisions that have addressed to what extent the state having legal custody of a child may impose liability under the special relationship exception when the child is abused by a parent. Following *DeShaney*, the Eleventh Circuit held that no special relationship existed, even when the state had legal custody of the child when the child was abused by his father, because the child's mother had physical custody and the child did not rely solely upon the state for his physical needs and safety. *Wooten v. Campbell*, 49 F.3d 696, 701 (11th Cir. 1995). As explained by the court, the affirmative duty to protect arises from the limitation which the state imposes on an individual's freedom to act on his own behalf, and the state did not impose any limitation on the child's personal liberty or freedom to act when the state instead placed the child in the physical custody of his mother and monitored the child's visitation with his father. *Id.* Thus, the state did not restrain the child's liberty to the extent it rendered him unable to care for himself, so the special relationship exception did not apply. *Id.* (citing *DeShaney*, 489 U.S. at 200). In *Lipman v. Budish*, the Sixth Circuit found that the extent of control required to meet the custody exception under *DeShaney* is the "intentional application of physical force and show of authority made with the intent of acquiring physical control," and that the state having legal co-custody of a child, which only gave the state the ability to take the child to doctor's appointments, was insufficient to demonstrate that the state had

9

the requisite control for the special relationship exception to apply. 974 F.3d 726, 743 (6th Cir. 2020).

Plaintiff alleges that DCS retained "legal custody" of J.M. during the six-month period from April 7, 2021 to June 27, 2021, during which time J.M. had a trial home visit with Yoder and Morgan, and J.M. was abused during the trial home visit. [DE 9 at ¶¶ 47, 71.] Morgan and Yoder, however, retained "physical custody" of J.M. during that period. [*Id.* at ¶ 41]. Plaintiff does not allege any facts to demonstrate that DCS Defendants had physical custody or control of J.M. during that six-month period. Rather, Plaintiff alleges that it was Yoder and Morgan who had physical custody. The fact that DCS Defendants may have had legal and physical custody prior to that six-month period does not change the analysis. *See DeShaney*, 489 U.S. at 192. The Court therefore finds that Plaintiff fails to allege any facts that give rise to a constitutional duty to protect under the special relationship exception during that six-month period that DCS Defendants allegedly had legal custody of J.M.

As to the state-created danger exception, it is a "narrow" exception that "applies when the state creates or increases a danger to an individual." *Vill. of Arlington Heights*, 782 F.3d at 917 (citations omitted). This exception consists of three elements: (1) the state, by its affirmative acts, created or increased a danger faced by an individual; (2) the state's failure to protect that individual from danger was the proximate cause of his injury; and (3) the state's failure to protect shocks the conscience. *D.S. v. E. Porter Cnty. Sch. Corp.*, 799 F.3d 793, 798 (7th Cir. 2015). "To 'create or increase' must not be interpreted so broadly as to erase the essential distinction between endangering and failing to protect and thus circumvent *DeShaney*'s general rule." *Vill. of Arlington Heights*, 782 F.3d at 917 (internal quotations and citations omitted). Thus, "[w]hen courts speak of the state's 'increasing' the danger of private violence, they mean the state did something that turned a potential danger into an actual one, rather than that it just stood by and did nothing to prevent private

10

violence." *Id.* The Seventh Circuit also explained that the cases where they have found or suggested that liability attaches under the "state-created danger" exception are "rare and often egregious." *Id.* For instance, the exception could apply when a police officer arrested a sober driver, and left an obviously drunk passenger with the keys to the car who later caused a collision and injured the plaintiffs. *Id.* (citing *Reed v. Gardner*, 986 F.2d 1122, 1127 (7th Cir. 1993)). In contrast, a police officer failing to intervene to protect a student despite knowledge that she was being sexually molested by a middle school teacher did not warrant application of the exception because the police officer did not create or increase the danger, or make the student be in a worse position. *Id.* (citing *Windle v. City of Marion*, 321 F.3d 658, 661-62 (7th Cir. 2007)). In general, for the exception to apply, "the victim is safe before the state intervenes and unsafe afterward." *Sandage v. Bd. of Comm'rs of Vanderburgh Cnty.*, 548 F.3d 595, 598 (7th Cir. 2008).

As a preliminary argument, DCS Defendants argue that the state-created danger exception is inapplicable because "DCS Defendants did not place J.M. in greater danger than if DCS had never intervened and J.M. had remained with his parents his entire life." [DE 14 at 7.] The Court is not persuaded by this argument because it is an impermissibly broad reading of the Supreme Court's decision in *DeShaney*. The Supreme Court was careful to note that the state did not have liability because the state did not have custody of the child and played no part in creating the danger or leaving the child more vulnerable to the danger when the state, despite its knowledge of the abuse, did nothing. *See DeShaney*, 489 U.S. at 197. Caselaw following *DeShaney* have not foreclosed liability simply because a child was abused by a parent. In *Bank of Illinois v. Over*, a case in which a child was allegedly injured in her father's home, the Seventh Circuit suggested that if the state social workers knowingly placed the child in a position of danger by taking her to her father's house, then the defendants would not be shielded from liability by the decision in *DeShaney*. 65 F.3d 76, 78 (7th Cir. 1990) ("If the officers are complicit in the violence, they are liable."). In other decisions that have

11

followed *DeShaney*, courts have applied the state-created danger exception in similar circumstances where the state allegedly increased the risk of danger to a child by an abusive parent. *See Currier v. Doran*, 242 F.3d 905, 919-920 (10th Cir. 2001) (plausibly alleged state-created danger theory where children "would not have been exposed to the dangers from their father but for the affirmative acts of the state" which included failure to investigate allegations that father abused child); *T.D. v. Patton*, 868 F.3d 1209, 1236 (10th Cir. 2017) (affirming denial of summary judgment for state under state-created danger exception where harm to child by father arose after social worker recommended child remain in father's temporary custody); *Lipman*, 974 F.3d at 731, 747 (reversing grant of motion to dismiss where allegations that DCFS increased risk of violence to child by her mother when DCFS violated written policy and interviewed child about abuse in presence of child's mother was sufficient to demonstrate a due process violation under the state-created danger exception); *Ford v. Johnson*, 899 F. Supp. 227, 233 (W.D. Pa. 1995) ("The fact that the child is placed with a parent as opposed to a foster parent should not change the standards by which social agencies and their employees conduct their investigations."). Here, J.M. was presumably safer prior to DCS Defendants' alleged affirmative acts, which included knowingly withholding information from J.M.'s CASA and the CHINS court related to Yoder and Morgan's drug use and noncompliance with therapy, because J.M. was not in Yoder and Morgan's custody. By then allegedly undertaking those affirmative acts, DCS Defendants allegedly increased the danger to J.M. by causing J.M. to be placed in an abusive household with Yoder and Morgan.

Since the Court does not find that *DeShaney* shields the state when the state allegedly affirmatively acts to remove a child from his parents and then later places the child with his parents, the Court now turns to Plaintiff's amended complaint to determine whether Plaintiff sufficiently pleads the state-created danger exception. Plaintiff alleges that when J.M. was born, he had drugs in his system, and that J.M.'s parents had substantiated allegations of neglect and abuse regarding J.M.'s

12

older brother, M.Y. [DE 9 at ¶¶ 23-26.] J.M. was allegedly taken into custody by DCS at the hospital so he did not go home with Morgan and Yoder. [*Id.* at ¶ 27.] Plaintiff alleges affirmative acts such as "withholding Court ordered services for J.M., not performing Court ordered drug tests for J.M.'s parents, omitting information from reports and communications with J.M.'s [Court Appointed Special Advocate ("CASA")], providing and/or inserting false information in reports and investigations, and/or otherwise creating an inaccurate report[.]" [*Id.* at ¶¶ 43, 45.] Plaintiff also alleges that DCS Defendants informed J.M.'s CASA only about information that would "support the Defendants' narrative of case closure" and did not inform J.M.'s CASA before the trial home visit and wardship termination that they had ceased random drug testing on both parents for several months. [*Id.* at ¶ 45.] Plaintiff alleges that DCS Defendants were motivated by the "desired outcome of forcing a close to J.M.'s case by placing him with Alan Morgan and Mary Yoder." [*Id.* at ¶ 45.] Plaintiff alleges that DCS was aware, prior to and continuing over the course of J.M.'s wardship, that both J.M.'s parents had significant drug and mental health issues, and that Morgan had a history of domestic violence. [*Id.* at ¶¶ 33-37.] She also alleges that J.M.'s case was contingent on receiving therapy and getting the therapist's recommendation to close the case, but that therapy was never received and DCS Defendants intentionally withheld that information from the court and J.M.'s CASA. [*Id.* at ¶¶ 54-55.]

The Court finds these allegations sufficient to demonstrate affirmative acts that created or increased the danger to J.M. by Yoder and Morgan under the state-created danger exception. *See In R.S. by V.H. v. Lucas Cnty. Child. Servs.*, No. 22-3501, 2022 WL 17730531, at *4 (6th Cir. Dec. 16, 2022) (reversing grant of motion to dismiss where plaintiff alleged that a state worker who "stepped in to change the victim's circumstances" and initiated removal proceedings and recommended placement with family pastor despite the obvious potential for grave harm).

The Court also finds that, taking the allegations as true, Plaintiff sufficiently alleges that DCS Defendants' alleged failure to protect J.M. was the proximate cause of J.M.'s injuries and death, the second element of the state-created danger analysis. Plaintiff alleges that DCS Defendants knew that Morgan and Yoder had significant drug and mental health issues, that Morgan had a domestic violence history, and that Morgan and Yoder had a failed trial home visit with J.M.'s older brother, M.Y. [DE 9 at ¶¶ 33-37, 39.] Plaintiff alleges that, despite such knowledge, DCS Defendants intentionally and recklessly forced J.M.'s case to close by withholding information from the court and J.M.'s CASA. [*Id.* at ¶¶ 40, 43, 55.] Plaintiff also alleges that DCS Defendants ceased drug testing on both parents for several months, and lowered the safety standards despite knowledge of Morgan and Yoder continuing to use drugs, all so DCS Defendants could close his case. [*Id.* at ¶ 45.] Plaintiff further alleges that during the period of J.M.'s trial home visit, defendant Stowers received reports from a physician of suspected child neglect and malnutrition regarding one of J.M.'s siblings. [*Id.* at ¶ 57.] By allegedly failing to investigate and require services to address the abuse, and withholding information from the court and J.M.'s CASA, DCS Defendants allegedly caused J.M. to be in the care and custody of his parents, and therefore put J.M. at risk of severe and proximate harm.

Finally, taking Plaintiff's allegations as true, the Court also finds that Plaintiff sufficiently alleges that DCS Defendants' failure to protect shocks the conscience, the third element of the state-created danger exception. DCS Defendants allegedly knew that Morgan and Yoder had substance and mental health issues, as well as substantiated allegations of child abuse, from the time that J.M. was born until he was placed with his parents. When DCS Defendants had legal custody of J.M., DCS Defendants were allegedly responsible for placing J.M. in an abusive household with Yoder and Morgan, and therefore increased the risk of danger to J.M. Such conduct plausibly shocks the conscience. *See Currier*, 242 F.3d at 919-20 (state employee's failure to investigate allegations of child

14

abuse and recommending parent assume legal custody plausibly conscience shocking); *T.D.*, 868 F.3d at 1230 (affirming denial of summary judgment where social worker's awareness and failure to investigate potential abuse by child's father and withholding concerns from reports to juvenile court were conscience shocking).

Accordingly, the Court finds that Plaintiff alleges sufficient facts to support a violation of substantive due process rights against DCS Defendants arising from DCS Defendants' alleged affirmative acts that created or increased the risk of harm to J.M. by Morgan and Yoder.

   ii. Procedural due process

Plaintiff's amended complaint asserts a "1983 Claim based upon Special Relationship between J.M. and Dreessen, Goebel, and Stowers" as Count I, and "State Created Danger" as Count II. [DE 9 at 17.]  In Plaintiff's response in opposition to DCS Defendants' motion to dismiss, she argues that she plausibly states a viable procedural due process claim "arising from DCS Defendants' misconduct in misleading the CHINS court and J.M.'s CASA by, *inter alia*, misrepresenting facts, withholding information, and failing to carry out court orders in the CHINS case." [DE 19 at 24-25.]

"Procedural due process imposes constraints on governmental decisions which deprive individuals of liberty or property interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976).  A procedural due process claim involves a two-part analysis: first, whether the defendants deprived the plaintiff of a protected liberty or property interest and second, if so, an assessment of what process was due. *Brokaw v. Mercer County*., 235 F.3d 1000, 1020 (7th Cir. 2000).

In the child-custody context, there is a protected liberty interest in familial relations. *Id.* Thus, parental rights cannot be denied without an opportunity for the parent to be heard at a meaningful time and in a meaningful manner. *Id.* Plaintiff only cites to cases in her response in

15

which the court was assessing whether a parent's procedural due process rights were violated when the government sought removal of a child from the parent. *See Hernandez ex rel. Hernandez v. Foster*, 657 F.3d 463, 486 ("Due process requires that government officials not misrepresent the facts in order to obtain the removal of a child from his parents.").

In *Lipman*, the Sixth Circuit declined to find that plaintiff stated a viable procedural due process claim, explaining that "under *DeShaney*, individuals do not have a right to state protection against private harm. And because there is no such right, the Due Process Clause cannot impose procedural requirements in connection with its deprivation." *Lipman*, 974 F.3d at 751 (citations omitted). Nor has Plaintiff argued that J.M. had another protected interest that the state did not afford him adequate procedural rights prior to depriving J.M. of that interest.[1] The court therefore finds that Plaintiff has failed to state a procedural due process claim against DCS Defendants.

d. Fourth Amendment

Plaintiff argues in her response in opposition to DCS Defendants' motion to dismiss that she also pleads a violation of the Fourth Amendment claim against the DCS Defendants. [DE 19 at 25-26.] "The Fourth Amendment, incorporated by the Fourteenth Amendment, provides that [t]he right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures, shall not be violated." *Brokaw*, 235 F.3d 1000, 1009-10; U.S. Const., amend. IV. To determine whether there is a cause of action under the Fourth Amendment, the Court "must determine whether the defendants' alleged conduct constituted a seizure and if so, whether the

---

[1] Plaintiff cites to *Griffin v. Poynter*, No. 20-cv-1427-JES-JEH, 2021 WL 4495906 (C.D. Ill. Sept. 30, 2011) in her response where she argues that she plausibly alleges a due process violation. [DE 19 at 21 n.5]. In that case, the court stated, "Plaintiff has sufficiently alleged a procedural due process claim under the state-created danger exception to *DeShaney*." *Griffin*, 2021 WL 4495906, at *9. However, the Supreme Court in *DeShaney* analyzed to what extent the state may be liable for private violence under the substantive component of the Fourteenth Amendment's Due Process Clause, not under the procedural component. 489 U.S. at 195 ("The claim is one invoking the substantive rather than the procedural component of the Due Process Clause[.]") The Court therefore respectfully disagrees with the court's holding in *Griffin* that a procedural due process claim may arise under the state-created danger exception to *DeShaney*.

16

seizure was unreasonable in light of the factual allegations." *Id.* at 1010.   While removing a child from his home may give rise to a Fourth Amendment violation, Plaintiff does not allege that DCS Defendants removed J.M. from his home. Rather, the basis of Plaintiff's lawsuit is that DCS Defendants should not have placed J.M. back with his parents. Plaintiff does not otherwise allege any facts that plausibly state a violation of the Fourth Amendment; therefore, Plaintiff has failed to state a claim that the DCS Defendants violated J.M.'s Fourth Amendment rights.

   e. Qualified immunity

DCS Defendants argue that they are entitled to qualified immunity. [DE 14 at 9.]  To determine whether qualified immunity applies, the court must decide: (1) whether the facts the plaintiff has alleged make out a violation of a constitutional right; and (2) whether the right at issue was "clearly established" at the time of the defendants' alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). "[A] complaint is generally not dismissed under Rule 12(b)(6) on qualified immunity grounds." *Hanson v. LeVan*, 967 F.3d 584, 597 (7th Cir. 2020) (quoting *Alvarado v. Litscher*, 267 F.3d 648, 651 (7th Cir. 2001)). "Because an immunity defense usually depends on the facts of the case, dismissal at the pleading stage is inappropriate: The plaintiff is not required initially to plead factual allegations that anticipate and overcome a defense of qualified immunity." *Alvarado*, 267 F.3d at 651-52. Since the Court is addressing this question on a motion-to-dismiss, the court must take Plaintiff's well-pleaded allegations and reasonable inferences as true. *Hanson*, 967 F.3d at 596.

DCS Defendants argue that Plaintiff's allegations do not show that DCS Defendants violated a constitutional right.  With respect to Plaintiff's claim that DCS Defendants violated J.M.'s substantive due process rights under the special relationship exception, the Court agrees with DCS Defendants that Plaintiff fails to show a violation of a constitutional right arising from DCS Defendants allegedly having legal custody of J.M. from April 7, 2021 to June 27, 2021 for the reasons stated herein.

With respect to Plaintiff's claim that DCS Defendants violated J.M.'s substantive due process rights under the state-created danger doctrine, DCS Defendants' argument fails for the reasons discussed herein. The Court must then determine whether violating a child's constitutional right by creating or increasing the child's vulnerability to danger by a child's parent was clearly established.

"To determine whether a right is clearly established we look to controlling precedent from both the Supreme Court and [the Seventh Circuit], and if there is no such precedent we cast a wider net and examine all relevant case law to determine whether there was such a clear trend in the case law that we can say with fair assurance that the recognition of the right by a controlling precedent was merely a question of time." *Abbott v. Sangamon Cnty., Ill.*, 705 F.3d 706, 731 (7th Cir. 2013) (internal quotations and citations omitted). Such a right "must be clearly established in a particularized sense, rather than in an abstract or general sense." *Id.* Further, "a case directly on point is not required for a right to be clearly established and officials can still be on notice that their conduct violates established law even in novel factual circumstances." *Id.* (internal citations and quotations omitted).

As to the right to be free from state-created danger, the Seventh Circuit has found that "[i]t is clearly established that state actors who, without justification, increase a person's risk of harm violate the Constitution." *Paine v. Cason*, 678 F.3d 500, 510 (7th Cir. 2012). The Sixth Circuit found that the state-created danger doctrine was clearly established when DCFS allegedly violated a child's due process rights when their alleged affirmative actions led to further abuse by the child's mother. *Lipman*, 974 F.3d at 749-50 (collecting cases). The Tenth Circuit also affirmed denial of the summary judgment motion asserting a qualified immunity defense, finding that a reasonable official in the state social worker's shoes would have understood she was violating the child's constitutional right by creating or increasing the child's vulnerability to the danger posed by his father when the

18

state employee withheld certain information about the father's criminal history, withheld her concerns from her reports to the juvenile court, and her responsibility for the minor being placed and remaining in the father's home. *T.D.*, 868 F.3d at 1230-31. Thus, the Court finds DCS Defendants would have understood that they were violating J.M.'s constitutional rights by creating or increasing J.M.'s vulnerability to abuse by his parents.

Accordingly, the Court denies DCS Defendants' motion to dismiss as it relates to qualified immunity under the state-created danger theory of Plaintiff's substantive due process claim.

## CONCLUSION

For the reasons set forth above, DCS Defendants' motion to dismiss is **GRANTED IN PART** and **DENIED IN PART**. [DE 13.] Plaintiffs' substantive due process claim based on the special relationship exception, procedural due process claim, and violation of the Fourth Amendment claim are **DISMISSED**. Plaintiff's Fourteenth Amendment substantive due process claim based on the state-created danger exception may proceed.

SO ORDERED.

September 27, 2024

                                                  /s/ *Cristal C. Brisco*
                                                  CRISTAL C. BRISCO, JUDGE
                                                  UNITED STATES DISTRICT COURT